**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

GOVERNMENT EMPLOYEES' INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY, and GEICO CASUALTY CO.,

      Plaintiffs,

 vs.                                      **Case No.: 1:26-cv-22738-JB**

DG ESTHETIC AND THERAPY CENTER, INC,
d/b/a DG MEDICAL CENTER, DANIA LIMA,
MIAMI BLU SKY MEDICAL CENTER, INC.,
MERCEDES RAMIREZ SANCHEZ, ALEXEIS
GONZALEZ LACOSTA, OMC REHAB CENTER
LLC, OMAR CASTANEDA, PREFERRED
REHAB OF MIAMI INC., CARLOS
FERNANDEZ MESA, MAILIN RIVERO
ORTEGA, M.D., and LAUREN SCOTT

      Defendants

---

## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Defendants PREFERRED REHAB OF MIAMI INC., CARLOS FERNANDEZ MESA, by and through undersigned counsel, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, move for partial judgment on the pleadings.

### I.     INTRODUCTION

Plaintiffs brought causes of action for declaratory relief, RICO, common law fraud, FDUTPA, unjust enrichment against Defendants for allegedly submitting fraudulent personal injury protection insurance claims. Doc. 1

Their complaint alleges, among other things, that the services were unlawful because (a) Defendants falsified their clinical diagnosis to prescribe, bill for, medically unnecessary care; (b) Plaintiffs misrepresenting the nature, extent, results, of the patient exams to inflate the charges; (c) Plaintiffs billed for unlawful physical therapy services; (d) Plaintiffs misrepresented that the treating clinician directly supervised the follow up services and care.  Id., ¶ 2.

## II.    STANDARD

The standard for evaluating a motion for judgment on pleadings under Rule 12(c) is the same standard on a motion dismiss under Rule 12(b)(c)(6). *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2nd Cir. 2006)

As in a motion to dismiss, plausibility standard applies on a motion for judgment on the pleadings. *Gentilello v. Rege*, 627 F.3d 540, 543-33 (5th Cir. 2010).

The standard demands that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 67 L.Ed.2d 929 (2010)

## III.    ARGUMENT

### A.    THE COMPLAINT IS DEFECTIVE BECAUSE IT CONFLATES THE PRACTICE OF PHYSICAL THERAPY WITH MEDICINE AND NURSING

The gravamen of the Plaintiffs' complaint is that Defendants employed licensed massage therapists (LMTs), who were unlawfully performing "physical therapy" services.  This, however, stumbles out the gate because Plaintiffs did not allege that the services were prescribed by a licensed physical therapist (PT) and that the PT did not supervise LMTs in accordance with Florida

law.[1]  Instead, Plaintiff alleged that the "physical therapy" was prescribed by a medical physician or nurse practitioner.  Doc. 1, ¶ 15.  Yet, this is insufficient because it improperly conflates the practice of physical therapy with medicine and nursing.

Under Florida law, the practice of physical therapy, medicine, and nursing are distinct licensing practices.  *See* §§ 458.301, *et. seq.*, *c/f* §§ 464.001 *et. seq.*, 486.011, *et. seq.*

Accordingly, a PT cannot lawfully prescribe, supervise, medical care, nor can a medical physician lawfully prescribe, supervise, physical therapy unless licensed.  *See* § 458.32 *c/f* § 486.028, *Fla. Stat*;

This backdrop is the underpinning of the rule that "physical therapy" services provided by a licensed massage therapist, regardless of the degree of supervision by a <u>medical</u> physician, is not reimbursable.  *Gov't Employees Ins. Co., v. Quality Diag., Health Care Inc.*, 2021 WL 5157535 (11th Cir. 2021); *Gov't Employees Ins. Co., v. Right Spinal Clinic Inc.*, 2024 WL 4564168 (11th Cir. 2024); *See also Gov't Employees Ins. Co., v. Right Spinal Clinic Inc.* 2022 WL 2466039 at 4 (M.D. Fla. 2022) (concluding that medical physicians cannot lawfully delegate physical therapy services)

Because of overlap, however, Plaintiffs mistook the therapeutic services at issue for physical therapy when, instead, it constitutes medical or nursing care.  *See Gov't Employees Ins. Co., v. Seco*, 2023 WL 5955647 at 29-30 (S.D. Fla. 2023)

And in miscasting the services, Plaintiffs are assailing § 486.161(1), *Fla. Stat.*  There, the statute says this.

---

[1] Under Florida law, a licensed massage therapist, though unlicensed to practice physical therapy, may providing physical therapy under the direct on-site supervision of a licensed PT or PTA. *See* R. 64B17-.6.007(1), F.A.C., ("Unlicensed personnel *may* be utilized to assist in the delivery of patient care treatment by the physical therapist, with direct supervision by the physical therapist or the pThhysical therapist assistant.") (Emphasis added).

"No provision of this chapter shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the statutes applicable to the profession of chiropractic physician, podiatric physician, doctor or medicine, massage therapist, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath."

*Id.* (Emphasis added).

The statute's purpose is to ensure that a licensee's use of physical agents as part of, incidental to, the licensee's practice is deemed as the practice of the licensee's profession rather than the unlawful practice of physical therapy. *State Farm Mut. Auto. Ins. Co., v. Universal Med. Ctr of S. Florida Inc.*, 881 So.2d 557 (Fla. 3d DCA 2004); *See also Gov't Employees Ins. Co., v. Quality Diag. Healthcare Inc.*, 369 F.Supp.3d 1292, 1300-01 (S.D. Fla. 2019)

Since Plaintiffs allege that the services were prescribed by a medical physician and nurse practitioner, then the services cannot be the unlawful practice of physical therapy. To assume otherwise, runs § 486.161(1) backwards.

Further, if it were the case that the LMTs were unsupervised, then they were not unlawfully practicing physical therapy, or medicine, but instead massage. *See* § 486.161(1). This is dovetailed by the rule that services provided by unsupervised massage therapists constitutes the practice of massage therapy which is not eligible for pip reimbursement. *Geico Gen. Ins. Co., v. Beacon Healthcare Ctr. Inc.*, 298 So.3d 1235 (Fla. 3d DCA 2020) ("Medical benefits do not include massage therapy as defined in s. 480.033 … .") (Emphasis added)

Conversely, if an LMT is acting under the direction and supervision of a licensed medical physician or nurse practitioner, then the services are reimbursable as medical or nursing care. *See* § 627.736(1)(a)2, *Fla. Stat.*, ("The medical benefits provide reimbursement only for: * * * Upon referral by a provider described in subparagraph 1., follow up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1. which may be provided,

- 4 -

*supervised, ordered, or prescribed only by a physician licensed under chapter 458 ... or an advanced practice registered nurse licensed under chapter 464*.") (Emphasis added); *Quality Diag. Healthcare Inc*., 369 F.Supp.3d at 1301 n.7 (S.D. Fla. 2019) ("If … [a massage therapist] was acting as medical assistant under the supervision of a licensed physician, then PIP reimbursement would be allowed for his services as incidental to the supervising physician's medical practice."); *Star Cas. Ins. Co., v S. Florida Pain & Rehab of Hialeah LLC*, 28 Fla. Weekly Supp. 670a (Fla. 17th Jud. Cir. App. 2020) (services provided by LMTS under a chiropractor's prescription and supervision is reimbursable under the pip statute as chiropractic care)

Defendants' contention is not foreclosed by the Eleventh Circuit's precedent in *Quality Diagnostic* and *Right Spinal*, as there, the providers didn't make the argument Defendants make here. Instead, the providers argued that the LMTs were performing "physical therapy" under the direction and supervision of a licensed medical physician. *See Quality Diag., Health Care Inc.,* 2021 WL 5157535*; Right Spinal Clinic Inc.,* 2024 WL 4564168.

In hindsight, the providers shaped the wrong argument. *Id*. But Defendants model the right one here.

In fact, the District Court in *Seco* is the first to encounter it. There, the Court bought it in denying the insurer's motion for summary judgment. *See Seco,* 2023 WL 5955647 at 29-30.

**B.      THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT THE INVOICES MISREPRESENTED THAT THE PRACTITIONERS DIRECTLY SUPERVISED THE SERVICES**

Plaintiffs failed to plead sufficient facts which establishes that Defendants misrepresented, in Box 31 of the invoices, that the prescribing practitioners <u>directly</u> supervised the follow-up care.

The CMS instruction for Box 31 promulgates that "[i]n the case of a service that is provided incident to the service of a physician or nonphysician practitioner, when the ordering physician or

non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31."[2]

42 C.F.R. § 410.32(b)(ii) defines direct supervision to require the physician's on-site supervision or virtual presence through audio/video communication technology when not physically present:

> "Direct supervision in the office setting means that the physician (or other supervising practitioner) must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the service. It does not mean that the physician (or other supervising practitioner) must be present in the room when the service is performed. *The presence of the physician (or other practitioner) required for direct supervision may include virtual presence through audio/video real-time communications technology (excluding audio-only) for services without a 010 or 090 global surgery indicator*."

*Id.*  (Emphasis added)

And "when the supervising practitioner provides direct supervision using real-time audio-visual technology, the supervising practitioner [] does *not* need to be virtually present throughout the performance of the procedure, but they need to be immediately available to provide the virtual presence whenever necessary." 88 F.R. 78818-01, Nov. 16, 2023; 2023 WL 7701620 at 78880.

In the present case, Plaintiffs did not plead facts showcasing that the practitioners did not comply with the rule, as there are no facts indicating that when the LMTs performed the services, they were either not on-site, or "virtually" unavailable when not.  *See Id.*

In sum, the complaint does no more than assert, in a conclusory fashion, that the therapists were "unsupervised." And in doing so, Plaintiffs "cherry pick" that a physician "must be present in the office suite," but omits the rest of the rule: "the presence of the physician (or other

---

[2] https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c26.pdf

practitioner) required for direct supervision may include virtual presence through audio/video real-time communications technology (excluding audio-only) … .” § 410.32(b)(ii)

A well-settled benchmark is that a complaint must state enough factual matter to raise a right to relief.  *Twombly*, 550 U.S. at 556-57, 127 S.Ct. at 1965-66.

Here, Plaintiffs’ complaint falls well short of *Twombly*’s dictum.  Ergo, the complaint should be dismissed.  *See Id*.

### C.   THE COMPLAINTS FAILS TO ESTABLISH A PRIMA FAICE CASE ON MATERIALITY

The complaint fails to state a *prima facie* case that the misrepresentation in Box 31 of the invoices is “material” under § 627.736(5)(d), *Fla. Stat*.

Subsection (5)(d) commands that “an insurer is not considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph and are properly completed in their entirety as to all *material* provisions, with all relevant information being provided therein.”  *Id*.; (Emphasis added)

“Properly completed” under subsection (5)(d) means “providing truthful, substantially complete, and substantially accurate responses as to all *material* elements to each applicable request for information or statement by a means that may lawfully be provided and that complies with this section, or as agreed by the parties.” § 627.732(13), *Fla. Stat*. (Emphasis added).

In short, the statute is a materiality test.  *Right Spinal Clinic Inc*, 2022 WL 2466039 at 7-9.

Though the legislature did not define “material,” it is a legal term of art that refers to the rule, at common law, that a matter is material “[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction”; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter

"in determining his choice of action," even though a reasonable person would not." *Universal Health Serv. Inc., v. Escobar*, 579 U.S. 176, 193, 136 S.Ct. 1989, 2002-03 (2016)

The common law understanding, moreover, is the meaning the legislature intended because when the lexicon in a statute has a peculiar meaning in law, it is presumed the legislature intended that meaning. *City of Tampa v. Thatcher Glass Corp.*, 445 So.2d 578, 580 n.2 (Fla. 1984)

Thus, to establish materiality, Plaintiffs must allege that the treating physician, or medical director, exercised <u>no</u> degree of supervision permitted by law, which includes <u>indirect</u> supervision.[3] *See* R. 64B8-2.001(1)(b), *F.A.C.*,   Because, in such case, but for the misrepresentation, Plaintiffs would not have paid the claims, as the therapists were performing massage, which is no longer reimbursable. *Quality Diag. Healthcare Inc.*, 369 F.Supp.3d at 1301.

Though not mentioned in the complaint, the criterion (i.e., indirect supervision) is part and parcel of the applicable standard because the legislature did not qualify the degree of supervision in § 627.736(1)(a)(2).  And because the legislature is presumed to know the law,[4] it did not intend to cabin the statue to a single test.  If it did, the legislature knows how to express itself.

To that end, unlike direct supervision, the criterion matriculates that the "supervising licensee must [be] at a location which is within close physical proximity of the practice location of the supervised licensee and that the supervising licensee must be readily available for

---

[3] Although "materiality" is not an element in a cause action for unjust enrichment and FDUTPA, in this case it is because Plaintiffs' causes of action rest on § 627.736(5)(d).  Therefore, the statute governs.  So, Plaintiffs must plead and prove it. Otherwise, their causes of action fail. *See Right Spinal, Inc.*, 2022 WL 2466039 at 8-9 (denying summary judgment on insurer' unjust enrichment claim predicated on the provider mispresenting in Box 31 that the medical director directly supervised the patient care, as a genuine issue of fact remained whether the misrepresentation is material)

[4] *Newman v. Guerra,* 208 So. 3d 314, 318 (Fla. 4d DCA 2017).

consultation as needed." R. 64B8-2.001(1)(b). And that "[c]lose physical proximity shall be within 20 miles or 30 minutes" from the practice location of the supervised licensee. *Id.*

The rule squarely fits because massage therapists are licensees. *See* § 480.033(13), *Fla. Stat.*, ("Massage therapist" means a person *licensed* as required by this act, who performs massage therapy, including massage therapy assessment, for compensation.")

The construct, moreover, works in aid of other closely related provisions in the Florida Administrative Code. For instance, the Code permits medical physicians to serve as a medical director for five facilities at once and instills that medical directors shall supervise the daily activities at each facility. R. 59A-33.013 F.A.C; R. 59A-33.008(1) F.A.C.

Because of these parameters, a fortiori, a medical director cannot comply with the Code unless the degree of supervision is indirect, inasmuch nobody can be in two places at once. *See also* § 458.348(3)(a), *Fla. Stat.*, ("A physician who is engaged in providing primary health care services may not supervise more than four offices in addition to the physician's primary practice location.")

But rather than pleading facts, demonstrative that treating physician or medical director did not comply with the rule, the complaint traffics the CMS diktat in a vacuum. Yet, this falls flat because assuming Plaintiffs had known that the treater/director engaged indirect supervision instead, then materiality fails, as the invoices are still reimbursable. *See* § 627.736(1)(a)2. Which is in keeping with the rule that misrepresentation is not material unless the recipient would've changed his choice of action had the truth been known. *Atlantic Nat. Bank of Florida v. Vest*, 480 So.2d 1328, 1332 (Fla. 2d DCA 1985)

Defendants position is not only bottomed on § 627.736(1)(a)2, but also the directive that supervising physician must be listed in Box 31 regardless of the degree of supervision. Otherwise,

pip reimbursement is barred.  *See* § 627.736(5)(b)1.f, *Fla. Stat*. ("[a]n insurer or insured is not required to pay a claim or charges: \*\*\* For medical services or treatment billed by a physician and not provided in a hospital unless such services are rendered by the physician or are incident to his or her professional services *and are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services that were rendered and billed*. ") (Emphasis added).

In this respect, the CMS rule for Box 31 is also constrained by statue's fiat that the rule only applies to the extent that it's applicable.  *See* § 627.736(5)(d) ("All billings for such services rendered by providers must, *to the extent applicable*, comply with the CMS 1500 form instructions ... .") (Emphasis added)

Thus, since the rule competes with subsection (5)(b)1.f., strict adherence is pacified.  *See Id.*  Otherwise, it would frustrate the remedy by converting Florida's no fault law into a "no-pay" statute. *See Irvin v. Dept. of Health and Rehabilitative Services*, 790 So.2d 403, 406 (Fla. 2011) ("When a statute is both in derogation of the common law and remedial in nature, the rule of strict construction should not be applied to frustrate the legislative intent. The statute should be construed liberally to give effect to the legislation.") (citations omitted)

Also, the complaint is also poorly manufactured because Plaintiffs failed to propound facts exhibiting that Defendants knew, or had reason to know, that Plaintiffs attached importance to the whether the physicians were executing indirect supervision in lieu of direct. *See Escobar,* 79 U.S. at 193, 136 S.Ct. at 2002-03.  So, in that landscape, materiality flatlines too.

The upshot, then, is that Plaintiffs cannot state a *prima facie* unless (a)  Plaintiffs plead sufficient facts formulating that the treating physician (or medical director) exercised <u>no</u> degree of supervision permitted by law; and had Plaintiffs known, they would not have paid the invoices

because, in such case, the services constitute un-reimbursable massage;[5]  or (b) assert Plaintiffs put Defendants on prior notice that it would not pay the invoices if the supervising physician is performing indirect supervision.  *See Escobar, supra.*

Accordingly, because the complaint does not allege such facts, it fails to state a cause of action upon which relief can be granted. The complaint should be dismissed.

### D.     THE COMPLAINT PLED INSUFFICENTS FACTS TO LAY OUT THAT DEFENDANTS REPRESENTATIONS ON MEDICAL NECESSITY AND CODING ARE STATEMENTS OF FACT

Plaintiffs posit that Defendants furnished phony clinical diagnoses to bill medically unnecessary follow up care.  Doc. 1, ¶ 31. However, Plaintiffs have not sufficiently laid out that the diagnoses are statements of fact.

For example, the complaint does not embody <u>extraneous</u> facts to the treatment records, upon which deceit can be inferred, and that Plaintiffs became aware of such facts <u>after</u> compensating Defendants.

Instead, the complaint extracts deception from the submissions alone.  Yet, this is inadequate because, unless extrinsic facts are pled supporting the inference of mischief, the diagnoses are opinion statements, as the parties were on equal footing.  Which comports with the rule that "a statement by a party having exclusive or superior knowledge may be regarded as a statement of fact *although it would be considered an opinion if the parties were dealing on equal terms.*" *Ramel v. Chasebrook Const. Co.*, 135 So.2d 876, 879 (Fla. 2d DCA 1961) (Emphasis added); *See also Meija v. Jurich,* 781 So.2d 1175, 1177 (Fla. 3d DCA 2001); *United States v. AseraCare Inc.*, 938 F.3d 1278, 1297 (11th Cir. 2019) ("A properly formed and sincerely held

---

[5] *See Beacon, supra.*

clinical judgment is not untrue even if a different physician later contends that the judgment is wrong.")

Plaintiffs fare no better charging Defendants with deceit in upcoding the initial and follow up exams. Doc. 1, ¶ 31

On that score, Plaintiffs evince that Defendants misrepresented the severity of the insureds injuries because the insureds were involved in low impact accidents.  Doc. 1, ¶¶ 121-22.  However, it's not plausible that Plaintiffs were unaware of the circumstances. Insurers procure accident reports when adjusting pip claims.  Thus, the clinicians' representations are not statements of fact, inasmuch both parties had equal knowledge of the accidents.  *See Ramel, supra.*

Plaintiffs complain that Defendants did not retrieve, review, or analyze prior medical records to inflate the charges. Doc. 1, ¶ 144.  But it's not plausible that Plaintiffs didn't know this either.   Indeed, if Defendants' submissions did not reflect that the treaters retrieved additional records and reviewed them, then the coding is not a statement of fact, but instead an opinion as the parties were (once again) dealing on equal terms.  *See Ramel, supra*.

To state a claim, Plaintiffs would have to allege instead that the exam reports reflected that clinicians retrieved and analyzed additional records, and that Plaintiffs discovered thereafter that wasn't the case.  But the complaint is not framed this way.

Plaintiffs vouch that Defendants mispresented the time the clinicians spent with the patients, the extent of the medical decision making. Doc. 1, ¶ 124.  However, the complaint doesn't explain how Plaintiffs came to this deduction.   Which begs the question, was it solely from Defendants' submissions that Plaintiffs received and reviewed before the transactions? If so, there is no case.  *See Allstate, infra*.  On the other hand, it's from collateral <u>facts</u> that came to Plaintiffs' attention after compensating Defendants, then perhaps there is one.

But instead of explaining how Plaintiffs put "two and two together," they aver facts gleaned from the representations themselves.  Yet,  the standard  requires that Plaintiffs must allege facts, extrinsic to the representations (i.e., the contents of the submissions), to infer that the coding is deceitful.   Otherwise, there is no case to be had under the principle that opinion statements are not actionable for fraud <u>unless</u> the maker knows of incompatible facts but fails to disclose them to the recipient. *See Ramel* 135 So.2d at 876 (contractors' representation that a house is "well-constructed" was actionable as a statement of fact where the contractor had specialized knowledge, which was not disclosed to the buyers, that the house was built on muck); *Restatement (Second) of Torts* § 539(1)(a) (1977)

In short, Plaintiffs' scaffolding does not satisfy the exception to the rule.  *c/f Meija*, 781 So.2d at 1175  (buyers stated a cause of action for fraud where the buyers pled collateral facts, which came to light after the sale, supporting the inference that the sellers knew that their pre-sale statements were not puffery but instead falsehoods);  *See also Zingale v. Mills Novelty Co*., 244 Wis. 144, 11 N.W.2d 644 (1943) (seller's opinion statement actionable where seller had exclusive knowledge of undisclosed facts, that rendered the statement false.)

*Allstate Ins. Co., v. Advanced Health Professionals P.C*., 256 F.R.D. 49, 62 (D. Conn. 2008) illustrates how the exception applies in the present context.

In *Allstate, supra*., the District Court concluded that the insurer cannot state a cause of action for fraud by solely parroting facts from the provider's submissions that the insurer reviewed when adjusting the claims; the insurer, instead, needed to allege extrinsic facts indicating that provider knew the submissions were fabricated. *Id*. at 62.

That is precisely the problem here. *c/f Id*.   Therefore, the Court should dismiss the complaint.

WHEREFORE the Defendants, PREFERRED REHAB OF MIAMI INC., CARLOS FERNANDEZ MESA, by and through undersigned counsel, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, prays for a judgment of dismissal.

Respectfully Submitted,

*/s/Christian Carrazana*
Christian Carrazana, Esq.
Fla. Bar No.: 188115
**CHRISTIAN CARRAZANA, P.A.**
*Attorney for Defendants*
1612 Redfin Dr.,
Poinciana Florida 34759
Tel No.: (786) 262-0584
Email:  christian@carrazana-legal.com

- 15 -

## <u>CERTIFCATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of this document was served through the

CM/EFC system on all counsel of record.


<u>/s/Christian Carrazana</u>
Christian Carrazana, Esq.